1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DEBORAH J. DODSON,

               Plaintiff,

      v.

MORGAN STANLEY DW, INC.,

               Defendant.

Case No.  C06-5669RJB

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

      This matter comes before the Court on Defendant's Motion for Summary Judgment.  Dkt. 43.  The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

## PROCEDURAL HISTORY AND RELEVANT FACTS

      *Employment History*.  Plaintiff Deborah Dodson ("Plaintiff") is a woman who began working as a financial advisor for Dean Witter in 1996 in the firm's Tacoma, Washington branch office.  Dean Witter later became Morgan Stanley.  Through its financial advisors, Defendant Morgan Stanley provides its clients with comprehensive financial planning services.  Branch managers are responsible for the daily operation and administration of branch offices, including personnel matters.  Quang Bui was the Tacoma branch manager during the relevant times of Plaintiff's employment.

ORDER

Page - 1

1       According to Morgan Stanley, financial advisors are required to perform at a level that is

2  consistent with their years of experience in the industry.  Financial advisors are expected to

3  increase their books of business, including the number of accounts, assets under management and

4  gross production in a manner that is consistent with their peers with equal industry experience.

5  Financial advisors sometimes enter into Joint Production Agreements ("JPA") with other financial

6  advisors to share some or all of their clients.  Individual financial advisors select partners based on

7  a variety of factors, including family relationships, friendships, and the type of business or type of

8  clientele on which they focus.

9       According to Morgan Stanley, branch managers do not "direct or require individual

10  financial advisors to form JPAs with other specific financial advisors."  Dkt. 43, at 8.  Morgan

11  Stanley branch managers approve the establishment of JPAs by "ensuring that the parties have

12  executed and completed the required paperwork, after the interested financial advisors themselves

13  have already identified the person(s) with whom they would like to team." *Id.* Ultimately, a

14  Morgan Stanley regional director "blesses" a JPA.  Dkt 54-4, at 3.

15       In 1998, Plaintiff entered into a JPA with John West, a senior financial advisor at Morgan

16  Stanley.  The West-Dodson JPA created a partnership for the purpose of sharing income from a

17  limited number of accounts.  Mr. West had created several partnerships with other male and

18  female financial advisors in the Tacoma branch, but his partnership with Plaintiff was, according

19  to Mr. West, one of his "biggest."  Dkt. 54-3, at 3.

20       Initially, Plaintiff performed well within the West-Dodson JPA, and the partnership

21  experienced some growth.  According to Mr. West, the partnership later began to experience a

22  decrease in business.  According to Morgan Stanley, this decrease was partly due to a market

23  decline, but also resulted from deficiencies in Plaintiff's work habits.  Mr. West stated that he

24  began to observe Plaintiff coming into the office at later hours and less frequently, and staying at

25  work for shorter periods of time.  Mr. West further stated that some clients informed him that

26  they had trouble contacting Plaintiff, while another client requested that Plaintiff not work on that

27  client's account.  Mr. West did not express any of these criticisms to Plaintiff or to anyone at the

28

1 | Tacoma branch, including the branch manager.  Additionally, Mr. Bui stated that Plaintiff had no

2 | deficiencies in her performance reviews, but that he had expressed concerns to Plaintiff about the

3 | number of hours she was working.  Dkt. 54-4, at 20.

4 | *West-Lucero Joint Partnership Agreement.*  On or about November 21, 2003, Mr. West

5 | entered into a JPA with a male financial advisor named Christopher Lucero.  Mr. Lucero was

6 | junior to Plaintiff in terms of years worked at Morgan Stanley.  The West-Lucero JPA was a full

7 | partnership, and included all of the assets managed by both men individually.  According to

8 | Plaintiff, the West-Lucero JPA was "dramatically different in scope" than the West-Dodson JPA,

9 | as the West-Dodson JPA included only specific, limited assets.  Dkt. 51, at 4.   Morgan Stanley

10 | described the West-Lucero JPA as "similar to those West had with other Financial Advisors,

11 | though with a larger number of clients and more assets."  Dkt. 43, at 11.

12 | According to his deposition, Mr. West chose to partner with Mr. Lucero based on Mr.

13 | Lucero's work ethic and knowledge about stocks and trading.  Mr. West also stated that he liked

14 | Mr. Lucero's approach to client service, and noted that Mr. Lucero's production numbers showed

15 | significant growth.  The parties dispute whether Mr. Bui was involved in Mr. West's selection of

16 | Mr. Lucero.  Morgan Stanley contends that Mr. West chose to partner with Mr. Lucero on his

17 | own volition, and without prior encouragement or facilitation by Mr. Bui.  Plaintiff contends that

18 | Mr. Bui encouraged Mr. West to partner with Mr. Lucero.  Plaintiff also claims that when asked

19 | by Plaintiff about the reason Mr. West partnered with Mr. Lucero, Mr. West responded, "You

20 | know Deborah, good old boys network."  Dkt. 54-2, at 12.  Plaintiff has also alleged that prior to

21 | the formation of the West-Lucero partnership, Plaintiff repeatedly refused requests by Mr. Bui to

22 | set him up with her female friends.  Mr. Bui denies having made these requests.

23 | Plaintiff completed an intake questionnaire with the EEOC in August 2004, and alleged

24 | that she was passed over for the partnership based on her gender.  Dkt. 54-14.  Plaintiff signed the

25 | EEOC form on August 19, 2004.  The signature block included a declaration which stated in part,

26 | "I further give my consent for the EEOC, to file this questionnaire as a charge, if necessary to

27 | meet timeliness purposes...".  *Id.*  Plaintiff's formal charge was entered on October 15, 2004.

28 |

ORDER

Page - 3

1   Dkt. 60, at 5.  On July 26, 2006, the EEOC issued a determination as to Plaintiff's charge, finding

2   that "there is reasonable cause to believe that [Morgan Stanley's] policy of allowing established

3   financial advisors choose partners for lucrative agreements resulted in [Plaintiff] being denied a

4   partnership in November 2003 because of her sex."  Dkt. 54-13.

5          As part of a force-reduction, Plaintiff's employment was terminated on or about August

6   11, 2005.  Plaintiff subsequently worked elsewhere as a financial consultant and broker.  Some of

7   Plaintiff's clients maintained Plaintiff as their financial advisor, while others kept their business

8   with Morgan Stanley.

9          *Alleged Defamatory Statements.*  Plaintiff claims that, at some point after he entered into

10  the West-Lucero JPA, Mr. Lucero made defamatory statements about Plaintiff to Plaintiff's

11  clients.  Mr. Lucero denies making such statements.  In her deposition, Plaintiff states: "When

12  [Mr. Lucero] inherited a large portion of my clients, he told [Plaintiff's clients] that [Mr. Lucero]

13  and [Mr. West] did business differently than I did. They only charged per transaction, whereas I

14  charged them a fee whether I did anything or not.  My clients that I talked to who told me about

15  this took that to mean that I was overcharging them."  Dkt. 44, at 48.  In response to the

16  question, "So Chris Lucero never said Deborah is overcharging you and doing nothing, is that

17  correct, that you know?", Plaintiff responded, "That I know of...yes."  *Id.*  But later in the

18  deposition, Plaintiff states that Mary Elstrom, presumably a client of Plaintiff, told Plaintiff that

19  Mr. Lucero "said some very nasty things about me, said I was overcharging her...".  Dkt. 44, at

20  49.

21         In response to an interrogatory, Plaintiff did not explicitly state that clients had told her

22  that Mr. Lucero made statements that Plaintiff "overcharged", but Plaintiff did state, "clients

23  interpreted [Mr. Lucero's statements] as 'Deborah is overcharging you and doing nothing.'"  Dkt.

24  60, at 12.   Plaintiff does not appear to have provided any affidavits from clients prior to Plaintiff's

25  filing of her response to Morgan Stanley's motion for summary judgment.

26         *Procedural History.*  On November 16, 2006, Plaintiff filed a complaint in this Court.

27  Dkt. 1.  Plaintiff filed the following causes of action: (1) violations of Title VII and RCW

28

ORDER

Page - 4

1  49.60.180 because Defendant's act of urging and facilitating lucrative partnership agreements to

2  the benefit of male employees and detriment of female employees, and depriving Plaintiff of a

3  lucrative partnership interest in favor of a less experienced male employee, constitutes disparate

4  treatment discrimination; (2) violations of Title VII and RCW 49.60.180 because Defendant's

5  policy of allowing established financial advisors to subjectively choose partners for lucrative

6  agreements constitutes disparate impact discrimination; (3) promissory estoppel because

7  Defendant, through its financial advisor John West, promised Plaintiff a substantial portion of Mr.

8  West's book of business; (4) defamation because Defendant is liable for defamatory statements

9  made by its employee, Christopher Lucero; and (5) interference with business expectancy based

10 on the statements made by Mr. Lucero.  Additionally, while not specifically alleged in the first and

11 second causes of action alleging sex discrimination, Plaintiff incorporates paragraphs from the

12 facts section of her complaint into these causes of action alleging, "...it was the pattern and

13 practice of defendant Morgan Stanley...to deprive female Financial Advisors of opportunities to

14 enter into lucrative Joint Production Agreements with senior Financial Advisors...".  *Id.*, at 4-5.

15

16                          **<u>MOTION FOR SUMMARY JUDGMENT</u>**

17         On September 18, 2007, Defendant Morgan Stanley filed a motion for summary judgment,

18 contending that (1) Plaintiff's promissory estoppel and interference with business expectancy

19 claims fail as a matter of law; (2) Plaintiff cannot establish intentional sex discrimination because

20 there has been no adverse employment action by Defendant, the formation of the West-Lucero

21 JPA was a legitimate non-discriminatory act, and Plaintiff has failed to establish pretext; (3)

22 Plaintiff's allegation that Defendant engaged in a pattern and practice of sex discrimination fails

23 because Plaintiff has not offered evidence of discriminatory intent; (4) any allegations of disparate

24 treatment or disparate impact discrimination for acts occurring before December 19, 2003, are

25 time-barred; and (5) Plaintiff cannot establish her defamation claim because no false

26 communications were made, Morgan Stanley is not liable for alleged statements made by Mr.

27 Lucero, and Plaintiff cannot demonstrate that she suffered damage.  Dkt. 43.  Morgan Stanley

28

ORDER

Page - 5

1   moves the Court to dismiss all of Plaintiff's claims.  *Id.*, at 7.

2        On September 27, 2007, Plaintiff filed a response to Defendant's motion for summary

3   judgment.  Dkt. 51.  Plaintiff contends that summary judgment as to the sex discrimination claim

4   is not appropriate  because Plaintiff suffered an adverse employment action, and Defendant's

5   inconsistent explanations for offering the partnership to Mr. Lucero constitute pretext under the

6   *McDonnell Douglass* burden-shifting test.  Plaintiff further contends that summary judgement as

7   to the defamation claim is not appropriate because Mr. Lucero's statements made to customers

8   about Plaintiff constitute defamation per se, the statements were made within Mr. Lucero's course

9   and scope of his employment with Defendant, and damages are presumed under Washington law.

10  Plaintiff also provides affidavits of two of Plaintiff's clients in support of her defamation claim.  In

11  her response, Plaintiff abandons her promissory estoppel and interference with business

12  expectancy claims.  *Id.*

13       On October 23, 2007, Defendant filed a reply.  Dkt. 59.  First, Defendant contends that

14  Plaintiff's intentional discrimination claim fails because Plaintiff has failed to state a prima facie

15  case of discrimination and has not presented any evidence that Defendant's non-discriminatory

16  reasons for Mr. West's offering of the partnership to Mr. Lucero is pretext for intentional

17  discrimination.  Second, Defendant contends that Plaintiff has failed to raise a triable issue of fact

18  regarding her disparate impact claim because Plaintiff has not alleged the existence of a practice

19  or policy and has not established that a policy had significant effects on her or on women.  Third,

20  Defendant argues that Plaintiff's defamation claim must be dismissed because evidence of

21  allegedly defamatory statements is inadmissible, any allegedly defamatory statements were non-

22  actionable opinion, Plaintiff failed to present evidence that Morgan Stanley is vicariously liable for

23  statements allegedly made by Mr. Lucero, and Plaintiff failed to demonstrate that she suffered

24  damages.

25       On October 24, 2007, Plaintiff filed a surreply.  Dkt. 63.  Plaintiff requests that the Court

26  strike Defendant's motion for summary judgment as to Plaintiff's disparate impact discrimination

27  claim because Defendant did not raise this argument in its motion for summary judgment.

28

ORDER

Page - 6

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56©). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

### 1. Promissory Estoppel and Interference with Business Expectancy Claims

In her response, Plaintiff abandons her claims under promissory estoppel and for intentional interference with business expectancy.  Dkt. 51, at 24.  The Court should dismiss these claims with prejudice.

### 2. Timeliness of Plaintiff's Sex Discrimination Claims.

Morgan Stanley dubiously contends that the alleged unlawful employment acts or practices raised in Plaintiff's complaint that pre-date December 19, 2003, are time-barred because, although Plaintiff filed an intake questionnaire in August 2004, she did not file a formal EEOC charge until October 15, 2004.  Dkt. 43, at 13 n. 9.  Morgan Stanley cites several 11th Circuit cases in support of its position that an intake questionnaire is not treated as a formal EEOC charge for the purpose of applying the time requirements of 42 U.S.C. § 2000e-5(e)(1).

In the same string of citations, however, Morgan Stanley includes a 9th Circuit Court of Appeals case which directly contradicts the position taken by Morgan Stanley.  Dkt. 43, n.9, citing *Languaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir. 1999).  This case states, "we previously have held that a detailed, signed intake form...may serve as a charge to initiate administrative proceedings."  *Id.*, *citing Casavantes v. California State Univ.*, 732 F.2d 1441, 1442-43 (9th Cir. 1984) (an intake questionnaire is sufficient to constitute a charge).

In its reply, Morgan Stanley states that the Supreme Court has granted certiorari to address the issue of whether an intake questionnaire may constitute a charge of discrimination.  Dkt. 59, at 2 n. 1.

Plaintiff filed her complaint in this Court, which is located in the 9th Circuit.  That the Supreme Court may address this issue in the future is not relevant, as no decision has yet been rendered.  Accordingly, the Court should apply the legal standard set forth by the 9th Circuit Court of Appeals and deny Morgan Stanley's motion to dismiss based on its contention that Plaintiff's claims are time-barred.

3. **Sex Discrimination Claims under Title VII and RCW 49.60.180**

Plaintiff claims that she was not offered a lucrative partnership based on her sex, in violation of Title VII and RCW 49.60.180.  In the first and second causes of action in Plaintiff's complaint, Plaintiff alleges that Morgan Stanley's facilitation of a partnership for a male employee, and depriving Plaintiff of the same opportunity, constitutes disparate treatment discrimination. Dkt. 1.  Plaintiff also alleges that Morgan Stanley's "policy of allowing established financial advisors to subjectively choose partners for lucrative agreements constitutes disparate impact discrimination." *Id.* .  Additionally, while not specifically alleged in the first and second causes of action, Plaintiff incorporates a paragraph from the facts section of her complaint into these causes of action alleging practice and pattern discrimination. *Id.*, at 4-5.

Under Title VII, an employer may be found liable for unlawful sex discrimination under one or more of the following legal theories: disparate impact discrimination, pattern and practice discrimination, or disparate treatment discrimination. *See E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1274 (11th Cir. 2000).

a. Pattern and Practice Claim.

Plaintiff alleges "it was the pattern and practice of defendant Morgan Stanley in November 2003 to deprive female Financial Advisors of opportunities to enter into lucrative joint Production Agreements with senior Financial Advisors, under which female Financial Advisors would have stood to enjoy substantial increases in income and client base." Dkt. 1, at 4.  Plaintiff also alleges that "... the facilitation by Morgan Stanley of a lucrative Joint Production Agreement with a senior Financial Adviser and a male, less experienced and accomplished Financial Adviser is part of a pattern and practice of sex discrimination at Morgan Stanley, where female Financial Advisers have been deprived of lucrative partnerships and financial opportunities routinely offered to their male counterparts." *Id.* at 5.  In its motion for summary judgment, Morgan Stanley moves the Court to dismiss Plaintiff's pattern and practice claim because Plaintiff has not provided evidence of discriminatory intent on the part of Morgan Stanley.  Dkt. 43, at 19 n.10.  Plaintiff did not

address the pattern and practice claim in her response. *See* Dkt. 51.

A plaintiff alleging pattern and practice sex discrimination claim must provide a prima facie case of discrimination. *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005). A plaintiff must also present a triable issue of fact as to whether the employer defendant possesses discriminatory intent. *See Joe's Stone Crab*, 200 F.3d at 1274. By demonstrating the existence of a discriminatory pattern or practice, a plaintiff establishes a presumption that the plaintiff has been discriminated against on the account of gender. *See Johnson,* 400 F.3d at 694. To establish a general discriminatory pattern, statistical data is relevant because it can be used to establish such a pattern. *See id., citing Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1363 (9th Cir. 1985). Ultimately, a plaintiff must prove "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id., citing Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 336, 97 S.Ct. 1843. These legal standards also apply to pattern and practice discrimination claims filed under the Washington Law Against Discrimination, RCW 49.60, *et seq. See Oda v. State*, 111 Wn.App. 79, 94 (2002).

Plaintiff has failed to establish a prima facie case of sex discrimination based on pattern and practice. Morgan Stanley made a showing of an absence of an issue of material fact as to discriminatory intent. In her response, Plaintiff did not address the pattern and practice claim. The evidence provided in the record in support of this claim appears to be limited to Plaintiff's own statement that "[t]hey're aren't any females with lucrative partnerships with senior brokers", and her statement in her EEOC charge that another female financial advisor was "passed over" by senior brokers. Dkt. 44, at 47, and Dkt. 54-13.

Plaintiff provides no statistical support for her pattern and practice claim, including any evidence reflecting percentage comparisons of male and female partners with "lucrative" joint production agreements. Plaintiff describes only the West-Dodson JPA and the West-Lucero JPA, and no specific comparisons to other JPAs involving female or male financial advisors are provided. Plaintiff admits that female financial advisors employed at Morgan Stanley are parties

1  to joint production agreements, yet has not provided a definition of "lucrative" in a manner that

2  makes it possible to distinguish a typical joint production agreement from a lucrative one.  As a

3  result, Plaintiff has not provided evidence that affords a trier of fact the opportunity to determine

4  whether the alleged pattern and practice exists.

5      Accordingly, the Court should grant Morgan Stanley's motion for summary judgement in

6  part and dismiss Plaintiff's sex discrimination claim based on pattern and practice under Title VII

7  and RCW 49.60.180.

8  b. Disparate Impact Discrimination Claim.

9      Plaintiff contends that Morgan Stanley's policy of "allowing established financial advisors

10 to subjectively choose partners for lucrative agreements constitutes disparate impact

11 discrimination against plaintiff because of her sex..."  Dkt. 1.

12     A disparate impact discrimination claim challenges "employment practices that are facially

13 neutral in their treatment of different groups but that in fact fall more harshly on one group than

14 another and cannot be justified by business necessity."  *Stout v. Potter,* 276 F.3d 1118, 1121 (9th

15 Cir. 2002) (citations omitted).  At the outset, the plaintiff making such a claim must make out a

16 prima facie case, and carries the burden of demonstrating that the challenged employment

17 practices produce a significantly discriminatory selection pattern.  *Eldredge v. Carpenters 46*

18 *Northern California Counties Joint Apprenticeship and Training Committee*, 833 F.2d 1334,

19 1338 (9th Cir. 1987).  "It is not sufficient to present evidence raising an inference of

20 discrimination...the plaintiff 'must actually prove the discriminatory impact at issue.'"  *Stout*, 276

21 F.3d at 1122.  A prima facie case is "usually accomplished by statistical evidence showing that an

22 employment practice selects members of a protected class in a proportion smaller than their

23 percentage in the pool of actual applicants."  *Id.*

24     Plaintiff filed a surreply and requested that Morgan Stanley's motion to dismiss the

25 disparate impact discrimination claim be stricken because Morgan Stanley did not raise this

26 argument in its motion for summary judgment.  While Morgan Stanley did not specifically address

27

28

1    Plaintiff's disparate impact discrimination claim in its motion for summary judgment, it did move

2    the Court to dismiss *all* of Plaintiff's claims.  Plaintiff is thus required to establish a prima facie

3    case of disparate impact discrimination.

4          Plaintiff has not established a prima facie case of disparate impact discrimination.  She has

5    offered no evidence supporting her claim that Morgan Stanley's policy of allowing financial

6    advisors to subjectively choose partners discriminates against women.  Plaintiff has provided no

7    statistical evidence and has not described any partnerships other than the West-Dodson and West-

8    Lucero JPAs.

9          The Court should grant Morgan Stanley's motion for summary judgment in part and

10   dismiss Plaintiff's disparate impact discrimination claim under Title VII and RCW 49.60.180 with

11   prejudice.

12   c. Disparate Treatment Discrimination Claim.

13

14         In its motion for summary judgment, Morgan Stanley moves the Court to dismiss

15   Plaintiff's intentional sex discrimination claims because (1) Plaintiff did not suffer an adverse

16   employment action, and (2) Plaintiff is unable to establish that Morgan Stanley's non-

17   discriminatory explanation for offering the partnership to a male was pretext for a discriminatory

18   motive.  Dkt. 43, at 19-24.

19         Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to

20   discriminate against an employee on the basis of sex.  *See* 42 U.S.C. §2000e-2(a).  Disparate

21   treatment discrimination is "the most easily understood type of discrimination...[t]he employer

22   simply treats some people less favorably than others" because of one or more of their protected

23   characteristics.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S.Ct. 1701, 1705 (1993),

24   *citing Teamsters v. United States*, 431 U.S. 324, 335-36 n.15, 97 S.Ct. 1843, 1855 n.15 (1977).

25   "Proof of discriminatory motive is critical, although it can in some situations be inferred from the

26   mere fact of differences in treatment...".  *Id.*

27         The three-stage burden-shifting test set forth in *McDonnell Douglass Corp. v. Green*, 411

28

ORDER

Page - 12

1   U.S. 792, 802-804 (1973), applies to both federal and state claims for disparate treatment

2   discrimination under Title VII and the Washington Law Against Discrimination, RCW 49.60, *et*

3   *seq.  See Coghlan v. American Seafoods Co.*, LLC., 413 F.3d 1090, 1093-94 (9th Cir. 2005); *Hill*

4   *v. BCTI Income Fund-I*, 144 Wn.2d 172, 181 (2001).

5           Under the *McDonnell Douglass* test, the plaintiff must first establish a prima facie case of

6   sex discrimination consisting of the following elements: (1) plaintiff belongs to a protected class;

7   (2) she was performing the job satisfactorily; (3) she suffered an adverse employment action; and

8   (4) other employees with qualifications similar to her own were treated more favorably.

9   *McDonnell Douglass Corp.*, 411 U.S. at 802.  If the plaintiff establishes a prima facie case, the

10  burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

11  adverse employment decisions. *Id.*  Once the defendant satisfies this burden, the plaintiff must

12  demonstrate that the employer's alleged reason for the adverse employment decision is a pretext

13  for a discriminatory motive. *Id.* at 804.  A plaintiff may establish pretext either directly, by

14  showing that unlawful discrimination more likely motivated the employer, or indirectly, by

15  showing that the employer's proffered reason is unworthy of belief.  *See Nidds v. Schindler*

16  *Elevator Corp.*, 113 F.3d 912, 918 (9th Cir. 1996).

17          *Prima Facie Case*.  Morgan Stanley contends that Plaintiff has not established a prima

18  facie case of sex discrimination.  Morgan Stanley argues that Plaintiff has not demonstrated that

19  she suffered an adverse employment action because (1) Plaintiff was already a partner to Mr.

20  West, and there was no promise of a more lucrative partnership made to Plaintiff, (2) Plaintiff's

21  employment termination constituted an intervening event which would have otherwise prevented

22  her from inheriting Mr. West's business, and (3) in any event, Morgan Stanley cannot be held

23  liable for actions taken by Mr. West.

24

25          An employer may not discriminate against an employee with respect to her compensation,

26  terms, conditions, or privileges of her employment.  *See* 42 U.S.C. §2000e-2(a)(1).  If

27  consideration of an employee for selection in a partnership is a term, condition, or privilege of

28

ORDER

1 employment, the protections of Title VII apply.  *Hishon v. King & Spalding*, 467 U.S. 69, 104

2 S.Ct. 2229, 2232 (1984).

3   Plaintiff has established that she suffered an adverse employment action.  First, Plaintiff

4 has provided evidence that the partnership offered to Mr. Lucero was more lucrative in terms of

5 compensation than the West-Dodson JPA.  *See* Dkt 54-4 and Dkt. 54-12.  Morgan Stanley has

6 not disputed that the West-Lucero JPA was a more lucrative partnership.  There is also evidence

7 which suggests that the opportunity to enter into partnerships with financial advisors may be a

8 privilege of employment at Morgan Stanley, thus triggering the protections of Title VII.  Morgan

9 Stanley had a policy of allowing financial advisors to enter into JPAs, and though advisors were

10 permitted to subjectively choose their partners, advisors were ultimately required to obtain

11 Morgan Stanley's approval.  Dkt. 43, at 8.

12   Second, Plaintiff's 2005 employment termination does not constitute an "intervening

13 event" that precludes recovery for the acts of sex discrimination alleged to have taken place in

14 2003.  Plaintiff has provided evidence that at least some of the benefits of the more lucrative

15 partnership, including a potentially higher income, may have taken effect prior to 2005.  *See* Dkt.

16 54-4 and Dkt. 54-12.

17   Third, Morgan Stanley has not demonstrated that, as a matter of law, it is not liable for

18 actions taken by Mr. West.  Plaintiff has provided evidence that Quang Bui, the branch manager,

19 encouraged the formation of the West-Lucero JPA, and acted on behalf of Morgan Stanley in

20 approving the JPA.  *See* Dkt. 54-1 and Dkt. 54-7.  In addition, the parties agree that Mr. Bui had

21 authority to approve or reject the agreement, and that a Morgan Stanley regional director had

22 authority to "bless" the agreement.  Thus, there exists a material dispute regarding Mr. Bui's

23 involvement in the creation of the West-Lucero JPA, and regarding the issue of Morgan Stanley's

24 liability.

25   The remaining elements of establishing a prima facie have also been met.  Morgan Stanley

26 has not challenged the first element; as a woman, Plaintiff belongs to a protected class.  The

27

28

ORDER

Page - 14

1   second element is also met, as a dispute exists as to Plaintiff's performance as it relates to the

2   potential for her selection as a partner.  Finally, Plaintiff has satisfied the final element by

3   providing evidence that Mr. Lucero was less senior and less experienced than Plaintiff but was

4   treated more favorably by being selected for the partnership.

5           Plaintiff has thus established a prima facie case of sex discrimination under Title VII and

6   RCW 49.60.180, and the burden shifts to Morgan Stanley to articulate a legitimate,

7   nondiscriminatory reason for its adverse employment decision.

8           *Morgan Stanley's Nondiscriminatory Explanation*.  Morgan Stanley has offered a

9   legitimate, nondiscriminatory reason for Mr. West's offering of the partnership to Mr. Lucero.

10  Mr. West stated that he selected Mr. Lucero based on his familiarity with Mr. Lucero's work

11  habits.  Mr. West regarded Mr. Lucero as diligent, accessible, and knowledgeable about stocks

12  and trading.  Mr. West also expressed negative impressions of Plaintiff's work habits, stating that

13  she received poor customer feedback and was working less hours than Mr. Lucero.  *See* Dkt. 54-

14  2.

15          The burden under *McDonnell Douglass* thus shifts back to Plaintiff to demonstrate that

16  Morgan Stanley's alleged reason for the adverse employment decision is a pretext for a

17  discriminatory motive.

18          *Pretext*.  Plaintiff contends that Morgan Stanley's explanation is pretext for a

19  discriminatory motive because Morgan Stanley has provided inconsistent explanations for the

20  formation of the West-Lucero JPA, and because evidence suggests that Mr. Bui "suggested and

21  orchestrated" this partnership.  Dkt. 51.  In its reply, Morgan Stanley contends that (1) whether

22  or not Mr. Bui was involved in the formation of the West-Lucero JPA is not relevant as to

23  pretext, (2) Plaintiff has failed to raise a triable issue of fact regarding the basis for Mr. West's

24  decision to partner with Mr. Lucero, (3) that Mr. West did not consider Plaintiff for the

25  partnership is not evidence of pretext, and (4) Mr. West's alleged failure to communicate

26  Plaintiff's performance issues is not evidence of pretext.  Dkt. 59.  Morgan Stanley also argues

27

28

1    that even if Mr. Bui and/or Mr. West offered the partnership to Mr. Lucero out of favoritism, or

2    because Mr. Bui and Mr. Lucero were "drinking buddies", Plaintiff has provided no evidence that

3    this favoritism was based on gender. Dkt. 43, at 23. Morgan Stanley further argues that Mr.

4    Bui's alleged requests of Plaintiff to set him up with her female friends cannot be shown to be

5    based on gender. *Id.* Morgan Stanley contends that the favoritism and efforts to arrange

6    relationships with women are "gender-neutral", and do not affect women any differently than

7    men.

8          A plaintiff may prove pretext by producing evidence demonstrating that the adverse

9    employment actions were motivated in whole or in part by discriminatory intent. *Dominguez -*

10   *Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). The plaintiff may meet this

11   burden by demonstrating that the proffered explanation is inconsistent or otherwise unbelievable.

12   *Id.* The plaintiff may offer direct or circumstantial evidence of discriminatory animus. *Id.* 1038.

13   Direct evidence is evidence that proves discriminatory animus without the need for inference or

14   presumption. *Id.* Such evidence typically consists of overtly discriminatory comments or actions

15   by the employer and creates a triable issue for the finder of fact, even if the evidence is

16   insubstantial. *Id.* Circumstantial evidence, which relies upon inferences and presumption, must be

17   both specific and substantial in order to withstand summary judgment. *See id.*

18         Plaintiff has met its burden of providing evidence of pretext. First, Plaintiff has provided

19   evidence that Morgan Stanley has provided inconsistent statements in support of its reason for not

20   offering the partnership to Plaintiff. While Mr. West and Mr. Bui have stated that Mr. West

21   decided on his own volition to offer a partnership to Mr. Lucero, Plaintiff has provided statements

22   by two individuals that Mr. Bui suggested the partnership to Mr. West. According to Plaintiff,

23   Mr. West stated that Mr. Bui "had facilitated for [Mr. West] to partner with [Mr. Lucero]." In

24   addition, Jeffrey Snider, a Vice President and Financial Advisor at Morgan Stanley, stated, "[Mr.

25   Bui] finally admitted that he had suggested [Mr. Lucero]." These statements contradict

26   statements made by Mr. West and Mr. Bui.

27

28

ORDER

Page - 16

Second, Plaintiff stated that when asked why Mr. West had entered into the partnership with Mr. Lucero, Mr. West said, "You know Deborah, good old boys network."  Plaintiff has also alleged that Mr. Bui "repeatedly asked" Plaintiff to "arrange contacts and relationships between female friends" of Plaintiff and Mr. Bui.  Dkt. 1, pp10.

The inconsistent statements, coupled with the "good old boys" statement and allegations of Mr. Bui's requests to be set up with Plaintiff's female friends, present a triable issue of fact as to the role Plaintiff's gender may have played in the formation of the West-Lucero JPA.  Morgan Stanley has not demonstrated that, as a matter of law, gender could not have played a role in the formation of the West-Lucero JPA.  A trier of fact can assess the credibility and weight to be given to the evidence offered by Plaintiff and Morgan Stanley, and can determine whether allegations of favoritism or requests to be set up with female friends are gender-neutral or support a finding of sex discrimination.

The Court should deny Morgan Stanley's motion for summary judgment in part as to Plaintiff's disparate treatment discrimination claim.

d.  Conclusion

The Court should dismiss Plaintiff's pattern and practice and disparate impact discrimination claims.  Plaintiff's disparate treatment discrimination claim should proceed.

**4.  Defamation Claim**

Morgan Stanley moves the Court to dismiss Plaintiff's defamation claim because (1) Morgan Stanley is not liable for alleged statements made by Mr. Lucero, (2) no false statements were made, and (3) Plaintiff was not damaged.  Dkt. 43.  In her response, Plaintiff contends that summary judgment is not appropriate because (1) Mr. Lucero defamed Plaintiff by telling her clients that Plaintiff had "overcharged" for her services, (2) Morgan Stanley is liable for Mr. Lucero's statements because the statements were made in the course and scope of his employment, and (3) Plaintiff's damages are presumed under Washington law because Mr. Lucero's statements constitute defamation per se.  Dkt. 51.  In its reply, Morgan Stanley contends

ORDER
Page - 17

1   that (1) affidavits submitted by Plaintiff in support of her response are not admissible, (2) any

2   alleged defamatory statements were non-actionable opinion, (3) Plaintiff failed to present any

3   evidence that Morgan Stanley is vicariously liable for alleged statements by Mr. Lucero, and (4)

4   Plaintiff has misstated the law regarding damages, and has not demonstrated that she suffered

5   damages as a result of the alleged statements.  Dkt. 59.

6   a.  Plaintiff's Affidavits in Support of Defamation Claim.

7

8         In support of her defamation claim, Plaintiff included affidavits from two of her clients in

    her response to Morgan Stanley's motion for summary judgment.  Dkt. 51 and Dkt. 55.  The

9   affidavits are signed by Mary Elstrom-Hobson and Jimmie Grant.  These clients stated that, after

10  Plaintiff's employment with Morgan Stanley was terminated, Mr. Lucero contacted them and said

11  that Plaintiff had been "overcharging" for her services.  Mr. Lucero is alleged to have made these

12  statements in an effort to persuade the clients to keep their business at Morgan Stanley, rather

13  than maintain Plaintiff as their financial advisor.

14

15         Morgan Stanley contends that the affidavits are inadmissible because the affidavits

16  contradict statements made by Plaintiff in her deposition and in response to an interrogatory, and

    because the statements constitute inadmissible hearsay.  Dkt. 59.   Morgan Stanley argues that

17  Plaintiff was under an obligation to supplement or correct Plaintiff's prior disclosures or discovery

18  responses  once she learned "that in some material respect the information disclosed [was]

19  incomplete or incorrect." *Id.*, at 10, *citing* Fed. R. Civ. P. 26(e)(1), (2).

20

21         Prior to her filing of these affidavits, Plaintiff had not provided sufficient evidence to

22  defeat a motion for summary judgment.  Plaintiff's own statements that clients had told her that

23  Mr. Lucero made the allegedly defamatory statements constitute inadmissible hearsay.  Because

24  the Court cannot consider inadmissible hearsay statements when considering a summary judgment

25  motion, the issue regarding admissibility of the affidavits must be addressed.  *See Dunlap v.*

26  *Wayne*, 105 Wn.2d 529, 536 (1986).

27         The Court should consider the affidavits submitted by Plaintiff.  First, the affidavits do not

28

1    contradict Plaintiff's prior disclosures.  In a response to an interrogatory, Plaintiff identified Ms.

2    Elstrom as one of the clients to whom Mr. Lucero made statements, and Mr. Grant is identified by

3    Plaintiff during a deposition.  Dkt. 44, at 50.  Neither affidavit is inconsistent with Plaintiff's

4    allegations.  Plaintiff never explicitly stated that Mr. Lucero *had not* told her clients that she was

5    "overcharging."  Rather, Plaintiff previously stated she didn't know whether Mr. Lucero used the

6    specific word "overcharge."  Plaintiff has never deviated from her general position – that Mr.

7    Lucero either made overt statements or other statements which her clients understood to mean

8    that Plaintiff had been overcharging for her services.  While Evidence Rule 26(e) imposes a duty

9    upon a party to supplement corrective or incomplete information, it does not impose a duty to

10   supplement information that is consistent.

11          Second, Morgan Stanley has not made a showing that the affidavits constitute inadmissible

12   hearsay.  As discussed below, Morgan Stanley has not shown that, as a matter of law, Mr. Lucero

13   was not acting within his scope of employment when he made the alleged statements.  Thus, the

14   admissibility of the evidence in the affidavits may be determined at trial.

15   b. Morgan Stanley's Liability.

16

17          Morgan Stanley contends that it is not liable for Mr. Lucero's alleged statements.

18          Under Washington law, "the doctrine of respondeat superior provides, generally, that the

19   master is liable for the acts of his servant committed within the scope or course of his

20   employment."  *Dickinson v. Edwards*, 105 Wn.2d 457, 466 (1986), *citing Nelson v. Broderick &*

21   *Bascom Rope Co.*, 53 Wn.2d 239, 241 (1958).  The test for determining whether an employee

22   was in the course of employment is "whether the employee was, at the time, engaged in the

23   performance of the duties required of him by his contract of employment, *or* by specific direction

24   of his employer; *or*, as sometimes stated, *whether he was engaged at the time in the furtherance*

25   *of the employer's interest. Id., citing Elder v. Cisco Constr. Co.*, 52 Wn.2d 241, 245 (1958)

26   (emphasis in original).

27          An employer can defeat a claim of vicarious liability by showing that the employee's

28

ORDER

Page - 19

1   conduct was (1) "intentional or criminal" and (2) "outside the scope of employment." *Robel v.*

2   *Roundup Corp.*, 148 Wn.2d 35, 52-53 (2002), *citing Niece v. Elmview Group Home*, 131 Wn.2d

3   39, 56 (2001).  An employer may be liable for the negligent acts of his employee, even if such acts

4   may be contrary to an employer's instructions. *Dickinson*, 105 Wn.2d at 470.  "Whether an

5   employee was acting within the scope of his employment is an issue of fact which should be

6   considered under the principles of summary judgment." *Id.* at 467.

7       Morgan Stanley first contends that Plaintiff has failed to present evidence that the

8   statements were made within Mr. Lucero's course of employment.  Morgan Stanley further

9   argues that such comments would have been made outside Mr. Lucero's scope of employment

10  because the statements were not authorized by Morgan Stanley.  These arguments are

11  unconvincing.  Contacting potential clients is within the scope of Mr. Lucero's employment.  Mr.

12  Lucero allegedly made these statements, to borrow a description from Morgan Stanley's own

13  brief, "in the context of soliciting potential clients."  *See* Dkt. 59, at 11.  Morgan Stanley has

14  described one of the duties of a financial advisor as  "increas[ing]...business

15  opportunities...through engaging in proactive and extensive client prospecting of potential

16  consumers...". Dkt. 43, at 8.  That Mr. Lucero may have violated company policy by making

17  these statements does not absolve Morgan Stanley from liability as a matter of law.

18  c. Alleged Defamatory Statements.

19
20      Plaintiff contends that Mr. Lucero's alleged statements that Plaintiff "overcharged" clients

21  was defamatory.  As a result, Plaintiff maintains that many of her clients did not follow her in her

22  subsequent work as a financial consultant and broker, resulting in lost income and business

23  opportunity and damage to her reputation.

24      A defamatory statement injures reputation by causing the defamed person to be shunned

25  by others or hurt in business relations.  *See Right-Price Recreation, L.L.C. v. Connells Prairie*

26  *Community Council*, 146 Wn.2d 370, 382 (2002), *citing* Restatement (Second) Torts, § 559

27  (1977).  "When a defendant in a defamation action moves for summary judgment, the plaintiff has

28

ORDER
Page - 20

1   the burden of establishing a prima facie case on all four elements of defamation: falsity, an

2   unprivileged communication, fault, and damages." *LaMon v. Butler*, 112 Wn.2d 193, 197 (1989)

3   (citations omitted).  The prima facie case must consist of specific, material facts, rather than

4   conclusory statements, that would allow a jury to find that each element exists.  *Id.*

5         Morgan Stanley is challenging the falsity, fault, and damages elements.

6         *Falsity*.  Morgan Stanley contends that Plaintiff's defamation claim fails because Plaintiff

7   has not established that the alleged statements were false.  First, in its motion for summary

8   judgment, Morgan Stanley argues that Plaintiff did not have knowledge that Mr. Lucero's

9   comments were untrue because she had not recalled whether Mr. Lucero had actually used the

10   word "overcharge."  Morgan Stanley argues that Mr. Lucero merely told clients that he would

11   conduct business differently than Plaintiff, and Plaintiff has offered no evidence that such a

12   statement is untrue.  Dkt. 43, at 26.  Second, in its reply, Morgan Stanley argues that Plaintiff

13   cannot establish falsity because the alleged statements are non-actionable opinion, rather than false

14   statements of fact.  Dkt. 59, at 10.

15
16         "Before the truth or falsity of an allegedly defamatory statement can be assessed, a

17   plaintiff must prove that the words constituted a statement of fact, not an opinion." *Robel v.*

18   *Roundup Corp.*, 148 Wn.2d 35, 55 (2002).  Defamatory statements concerning facts are

19   actionable, but expressions of opinion are protected under the First Amendment, and are not

20   actionable.  *See id.* (citations omitted).  Whether the allegedly defamatory words were intended as

21   a statement of fact or as an expression of opinion is a threshold question of law for the court.  *Id.*

22   The court determines whether a statement was capable of a defamatory meaning, and the jury

23   determines "whether a communication, capable of defamatory meaning, was so understood by its

24   recipient." *Ambury v. Cowles Pub. Co.*, 76 Wn.2d 133, 138 (1969), citing Restatement Torts §

25   614.

26         "To determine whether a statement is actionable, a court should consider at least (1) the

27   medium and context in which the statement was published, (2) the audience to whom it was

28

published, and (3) whether the statement implies undisclosed facts." *See id*. at 56, citing *Dunlap v. Wayne,* 105 Wn.2d 529, 539 (1986). A court should also consider "the degree to which the truth or falsity of a statement can be objectively determined without resort to speculation", and "whether ordinary persons...would perceive the statement as an expression of opinion rather than a statement of fact." *Benjamin v. Cowles Pub. Co.*, 37 Wn.App. 916, 923 (1984) (citations omitted).

Placing the burden on the plaintiff to prove the falsity of a defamatory statement can create difficulties, however, when "the defamatory charge is not specific in its terms but quite general in nature." Restatement (Second) Torts, § 613, comment j. [1]

Plaintiff has demonstrated falsity for the purpose of establishing a prima facie case of defamation. First, Plaintiff has alleged a statement that is capable of a defamatory meaning. While Morgan Stanley has characterized the alleged "overcharging" statement as a "sales pitch", there is a triable issue of fact as to how Mr. Lucero's statements would be perceived by an ordinary client. Mr. Lucero's statement could be reasonably interpreted as signifying simply that he planned to charge clients less than Plaintiff, but the statement could just as reasonably be interpreted as implying that Plaintiff's charging practices were improper, and possibly in violation of Morgan Stanley's policies or even applicable law.

Second, Plaintiff has alleged a statement that may be based on facts. Morgan Stanley compares Mr. Lucero's alleged statements to cases where spoken words such as "idiot" or "liar" were found to be abusive opinion that were not actionable as defamatory. Dkt. 59, at 10. Mr. Lucero's statements differ, however, because Mr. Lucero referred to the specific charging practices of Plaintiff, rather than merely characterizing her business practice in general terms.

Finally, Plaintiff has met her burden in establishing a prima facie case that the overcharging statement is false. While Plaintiff has not provided evidence of her charging practices

---

[1] Washington courts have cited the Restatement of Torts in several defamation cases. *See e.g.*, *Schmalenberg v. Tacoma News, Inc.*, 87 Wn.App. 579, 589 (1997) (citing Restatement (Second) Torts § 613(2), comment g).

ORDER
Page - 22

1  demonstrating that she had never overcharged clients, the evidence in the record nonetheless

2  creates an issue of fact.  First, Morgan Stanley has not argued that Plaintiff had been overcharging

3  customers.  None of the complaints in the record concerning Plaintiff's work performance

4  suggested that she was charging clients improperly.  Second, the statements alleging that Plaintiff

5  was "overcharging for her services" is general in nature because it is not clear what Mr. Lucero

6  may have meant by stating that Plaintiff was "overcharging."  At this stage of the litigation, it

7  would be unfair to require Plaintiff to prove that she never overcharged any client, without any

8  specific incidents identified by Mr. Lucero.  *See* Restatement (Second) Torts, § 613, comment j

9  ("Suppose, for example, that a newspaper publishes a charge that a storekeeper short-changes

10  customers...[how is the storekeeper] expected to prove that he has not short-changed

11  customers?")

12      *Fault and Damages.*  In its motion for summary judgment, Morgan Stanley contends that

13  summary judgment is appropriate because Plaintiff has not demonstrated that she suffered any

14  damages as a result of Mr. Lucero's alleged statements.  Plaintiff contends that Mr. Lucero's

15  statements constitute defamation per se, and damages are therefore presumed under Washington

16  law.  In its reply, Morgan Stanley contends that Plaintiff has "resorted to misstating the law"

17  concerning defamation per se, and argues that absent a showing of actual malice, Plaintiff was

18  required to show actual injury.

19      The standard of fault in a defamation case depends on the nature of the plaintiff.  If the

20  plaintiff is a public figure or official, the plaintiff must show actual malice.  *LaMon*, 112 Wn.2d at

21  197.  If the plaintiff is a private figure, the plaintiff need only show negligence.  *Id.*  A defamatory

22  statement is defamatory per se if it injures the plaintiff in his or her business, trade, profession, or

23  office.  *See Maison de France, L.T.D. v. Mais Oui!, Inc.*, 126 Wn.App. 34, 44-45 (2005), *citing*

24  *Caruso v. Local Union No. 690 of Int'l Brotherhood of Teamsters*, 100 Wn.2d 343 (1983).

25      A statement alleging that a plaintiff committed a criminal offense involving moral turpitude

26  has been held to be "clearly" defamatory per se.  *See Caruso*, 100 Wn.2d at 353.  But when the

27

28

1  definition of what is defamatory per se "goes far beyond the specifics of a charge of a crime, or of

2  unchastity in a woman, into the more nebulous area of what...deprives a plaintiff of social

3  intercourse...the matter of what constitutes libel per se becomes, in many instances, a question of

4  fact for the jury." *See id.* at 354.

5      Prior to 1974, Washington courts permitted presumed damages when defamation per se

6  had been shown.  *See Maison de France*, 126 Wn. App. at 54 (citations omitted).  In 1974, the

7  United States Supreme Court held that the First Amendment restricted the damages that a private

8  individual could obtain from a publisher for libel that involved a matter of public concern.  *Gertz*

9  *v. Robert Welch, Inc.*,  418 U.S. 323 (1974).   In this situation, presumed damages was ruled to

10  be impermissible unless the plaintiff could show "actual malice."  *Id.*  Relying on *Gertz*, the

11  Washington Supreme Court in 1983 held that a jury instruction that allowed a jury to presume

12  damages when a plaintiff has not shown actual malice violated the First Amendment.  *See Caruso*,

13  100 Wn.2d at 354.

14      Shortly after *Caruso*, the United States Supreme Court narrowed the *Gertz* rule, holding

15  that in matters that do not involve matters of public concern, and where the state interest

16  adequately supports awards of presumed damages, the First Amendment does not require a

17  plaintiff to show actual malice.  *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S.

18  749, 763 (1985).  In 2005, the Washington Court of Appeals held that "where no matters of

19  public concern are involved, presumed damages to a private plaintiff for defamation without proof

20  of actual malice may be available" and stated that it "believ[ed] that the [Washington] Supreme

21  Court will agree with [its] adoption of *Dun & Bradstreet*."  *Maison de France*, 126 Wn. App. at

22  54.  *See also Demopolis v. Peoples Nat. Bank of Washington*, 59 Wn.App. 105, 116 (1990)

23  ("The lessened protection *Dun & Bradstreet* affords defamatory communications made in private

24  disputes has been recognized by Washington courts, but not expressly adopted").

25      This Court adopts the holding of *Maison de France*.  Mr. Lucero's statements do not

26  involve a matter of public concern, so damages may be presumed under Washington law if

27

28

ORDER

1  Plaintiff can demonstrate that the statements constitute defamation per se.  The defamation claim

2  should proceed because there exists a triable issue of fact as to whether Mr. Lucero's alleged

3  statement that Plaintiff overcharged clients constitutes defamation per se.  Plaintiff has alleged

4  that Mr. Lucero's statements may have induced at least some of her clients to remain with

5  Morgan Stanley, which may support her argument that her business was injured as a result of the

6  statements.  While this Court is skeptical about Plaintiff's ability to demonstrate that Mr. Lucero's

7  statements are defamatory per se, or that damages in this case would be proper absent a showing

8  of actual damages, Plaintiff's defamation per se claim may proceed.

9      Thus, the Court should deny Morgan Stanley's motion for summary judgment as to

10  Plaintiff's defamation claim.

### PARTIES' BRIEFING

11
12      The parties should limit their briefs to factual and legal arguments.  The Court is not

13  interested in characterizations of the either party's arguments as "desperate", "absurd", or the

14  like.

### ORDER

15
16
17      Therefore, it is hereby

18      **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 43) is **GRANTED**

19  **IN PART AND DENIED IN PART**, as follows: (1) Plaintiff's promissory estoppel claim is

20  **DISMISSED WITH PREJUDICE**; (2) Plaintiff's claim for interference with business

21  expectancy is **DISMISSED WITH PREJUDICE**; (3) Plaintiff's claim alleging pattern and

22  practice discrimination under Title VII and RCW 49.60.180 is **DISMISSED WITH**

23  **PREJUDICE**; (4) Plaintiff's claim alleging disparate impact discrimination under Title VII and

24  RCW 49.60.180 is **DISMISSED WITH PREJUDICE**; (5) Plaintiff's claim alleging disparate

25  treatment discrimination under Title VII and RCW 49.60.180 may proceed; and (6) plaintiff's

26  claims alleging defamation may proceed.

27
28

1    The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of

2    record and to any party appearing *pro se* at said party's last known address.

3    DATED this 8th day of November, 2007.

4

5

6    ROBERT J. BRYAN

7    ROBERT J. BRYAN

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER

Page - 26