HON. ROBERT J. BRYAN

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| DEBORAH J. DODSON, )<br> Plaintiff, )<br>)<br>vs. )<br>)<br>MORGAN STANLEY DW INC., )<br> Defendant. ) | Case No. 3:06-cv-5669RJB |

**RESPONSE TO MORGAN STANLEY'S MOTION IN LIMINE NO. 2
TO EXCLUDE THE TESTIMONY AND OPINION OF LOUISE ROTH**

  Louise Marie Roth is an Associate Professor of Sociology at the University of Arizona. *See* Exhibit H to Turman Decl. in Support of Morgan Stanley's Motions in limine, p. 17. She received her Ph.D from New York University, and has written extensively on gender issues in the workplace, with particular emphasis on the financial industry. *Id.* at pp. 17-18. Plaintiff asked Dr. Roth to prepare an expert opinion and report concerning the "social science research on the mechanisms that produce gender inequality in financial careers." *Id.* at p. 2. Dr. Roth prepared a report on that topic, and her conclusions were produced to defendant pursuant to Rule 26.

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(360) 377-4614 fax

Morgan Stanley now seeks to preclude the expert opinion testimony of Dr. Roth, based on Evidence Rule 702 and the U.S. Supreme Court opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). For the reasons that follow, plaintiff opposes Morgan Stanley's motion.

## I. Law Applicable to the Admission of Expert Testimony

Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it is both relevant [FN7] and reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court must act as a "gatekeeper" to exclude "junk science" that does not meet Rule 702's reliability standards by making a preliminary determination that the expert's testimony is reliable. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147-48, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Daubert,* 509 U.S. at 589-90, 592-93, 113 S.Ct. 2786. As the Supreme Court emphasized, however, "[t]he inquiry envisioned by Rule 702 is ... a flexible one," *Daubert,* 509 U.S. at 594, 113 S.Ct. 2786, and must be "tied to the facts of a particular case." *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167 (quotation marks omitted).

The first step of the Rule 702 inquiry is to determine whether the expert is qualified to testify. *Paoli v. R.R. Yard PCB Litigation*, 35 F.3d 717, 741 (3rd Cir. 1994). A broad range of knowledge, skills and training qualify a witness as an expert. *Id.* Second, the Rule 702 inquiry requires the expert testimony to be reliably based upon scientific methods. *Paoli*, 35 F.3d at 742. These concepts have been articulated as factors to guide the Court's assessment of the reliability of proffered scientific expert testimony: (1) whether the theory or technique can be tested, (2) whether the theory or technique has been subjected to peer review, (3) whether there is a high rate of known or potential error, (4) whether there are standards controlling the technique's operation, (5) whether the theory enjoys "general acceptance," (6) whether there is a sufficient relationship between the technique and methods which have been established to be reliable, (7) whether the expert witness' qualifications are sufficient, and (8) whether the method has been put to non-judicial uses. *Daubert*, 509 U.S. at 593-94, 113 S.Ct. 2786.

RESPONSE TO MORGAN STANLEY'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY AND OPINION OF LOUISE ROTH - Page 2

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(360) 377-4614 fax

Some courts also consider additional factors relevant in determining reliability, including: (i) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation (see *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir.1995)); (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (*see Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)); (iii) whether the expert has adequately accounted for alternative explanations (*see Claar v. Burlington, N.R.R.*, 29 F.3d 499 (9th Cir.1994)); (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context (*see Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.1997)); and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert (*see Kumho Tire*, 526 U.S. 149-150.

Courts have generally held in favor of admitting expert testimony if it may be viewed as helpful to the factfinder. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 283 (8th Cir.), *cert. denied,* 516 U.S. 822, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995) (quoting *Fox v. Dannenberg,* 906 F.2d 1253, 1256 (8th Cir.1990)). The rule clearly "is one of admissibility rather than exclusion." *Arcoren v. United States,* 929 F.2d 1235, 1239 (8th Cir.), *cert. denied,* 502 U.S. 913, 112 S.Ct. 312, 116 L.Ed.2d 255 (1991). "The Federal Rules of Evidence embody a 'strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact. Rule 702, which governs the admissibility of expert testimony, specifically embraces this policy' and has a liberal policy of admissibility." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 780 (3rd Cir. 1996). Acknowledging the "liberal thrust" of the Federal Rules of Evidence, the Supreme Court in *Daubert* instructed that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.

RESPONSE TO MORGAN STANLEY'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY AND OPINION OF LOUISE ROTH - Page 3

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(360) 377-4614 fax

**II. The opinions expressed by Dr. Roth in her report are both reliable and relevant in this case.**

The expert report prepared by Dr. Roth sets out opinions concerning social science research on the mechanisms that produce gender inequality in the workplace, with particular emphasis on the financial services industry. Dr. Roth's opinions are well-supported by specific citations to research and studies performed in the field. The type of sociological study on which Dr. Roth relies has been considered by courts in Title VII cases. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235-36, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (utilizing expert evidence on sex stereotyping by a sociologist to find that a promotion decision was gender discrimination).

Morgan Stanley's objection on reliability rests not on the reliability of the social science cited and offered by Dr. Roth, but rather on its assertion that her opinions are "not based on sufficient facts or data." Dr. Roth's opinions, however, were based on facts and data noted extensively throughout her report. In addition, contrary to defendant's statement that "Dr. Roth did not review a single relevant document," *see* Defendant's Motion, p. 7, Dr. Roth did review numerous case-specific documents, as reflected in the Index of Documents provided at her deposition, including Morgan Stanley policies and procedures, compensation records, and Ms. Dodson's deposition. *See* attached Exhibit A to Decl. of T. Venneberg, Roth Depo., p. 9; Exhibit B to Decl. of T. Venneberg, Exh. 2 to Roth Depo. From both the citations included in her report, and her testimony concerning her review of case-specific documents and materials, there cannot be a serious argument made that Dr. Roth's conclusions are not based on "sufficient facts or data."

The primary issue that Morgan Stanley appears to have with Dr. Roth's expert testimony is that she does not offer an opinion as to whether the policies, environment or conduct of Morgan Stanley resulted in actionable discrimination. Under Evidence Rule 702, Dr. Roth was not required to offer such an opinion in order to make her expert testimony admissible. The rule allows admission of testimony regarding "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Dr. Roth's opinions and analysis will assist the trier of fact to understand how gender inequality comes about in the workplace,

RESPONSE TO MORGAN STANLEY'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY AND OPINION OF LOUISE ROTH - Page 4

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(360) 377-4614 fax

with particular emphasis on the financial services industry. It would not have been appropriate for Dr. Roth to render an opinion as to whether Morgan Stanley engaged in discrimination; that determination is left exclusively to the province of the jury.

Morgan Stanley should be familiar with the type of testimony to be offered by Dr. Roth, and the fact that it has previously been allowed. In *EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451 (S.D.N.Y. 2004), the court considered the question of whether to allow the proposed expert testimony of Dr. William Bielby, who was offered by the EEOC to testify concerning similar social science research.

> The EEOC argues that Dr. William Bielby, a social scientist with a Ph.D. in Sociology, will "assist the Court and Jury in understanding the findings from social science research about factors that create and minimize workplace gender bias, including how gender stereotypes affect personnel decisions, organizational policies and practices that create barriers to career advancement for women, and the kind of policies and procedures that effectively minimize gender bias, particularly in male-dominated work environments."

*Id.* at 460. Offering many of the same arguments that it does in this case, Morgan Stanley sought to have Dr. Bielby excluded as an expert witness. The court held that Dr. Bielby would be allowed to testify.

> Bielby may properly testify about gender stereotypes, and about how these stereotypes may have affected decisions at Morgan Stanley. He may also testify regarding whether policies and practices relating to gender bias might affect employees' utilization of an equal employment opportunity program, but may not seek to show that alleged deficiencies in such a program are evidence of discrimination.

*Id.* at 462.

In the present case, Dr. Roth has stayed away from offering the type of opinion that was precluded by the *EEOC v. Morgan Stanley* court. She has not offered or drawn conclusions about whether Morgan Stanley engaged in discrimination, or otherwise acted inappropriately with respect to Ms. Dodson. Dr. Roth's testimony concerning social science research on gender inequality and stereotyping is offered to "assist the trier of fact" in coming to *its own conclusions* about whether discrimination took place. That is the proper function of an expert; it is not the proper function of an expert to weigh the evidence, and make determinations that are the province of the jury.

RESPONSE TO MORGAN STANLEY'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY AND OPINION OF LOUISE ROTH - Page 5

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(360) 377-4614 fax

In addition to being reliable, Dr. Roth's opinions concerning the role of cognitive bias and stereotyping are very relevant in determining plaintiff's discrimination claims. In *Thomas v. Eastman Kodak Co.*, 183 F.3d 38 (1st Cir. 1999), the court noted the significance of those concepts in proving disparate treatment discrimination, stating as follows:

> The Supreme Court has long recognized that unlawful discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious animus. Indeed, discussing age discrimination in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Court characterized employer decisions " 'based in large part on stereotypes unsupported by objective fact,' " id. at 610-11, 113 S.Ct. 1701 (*quoting EEOC v. Wyoming*, 460 U.S. 226, 231, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983)), as "the essence of what Congress sought to prohibit in the ADEA," id. at 610, 113 S.Ct. 1701 (emphasis added). And the prohibition against this form of disparate treatment is not limited to the context of age discrimination. The Court has interpreted Title VII as " 'prohibit[ing] all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin,' " *County of Washington v. Gunther*, 452 U.S. 161, 180, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) (*quoting Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)), and has noted that this includes "the entire spectrum of disparate treatment of men and women resulting from sex stereotypes," *id. (quoting Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)). Stereotypes or cognitive biases based on race are as incompatible with Title VII's mandate as stereotypes based on age or sex; here too, "the entire spectrum of disparate treatment" is prohibited.

*Id.* at 59.

As to disparate impact discrimination, which will be considered at trial, Morgan Stanley concedes that Dr. Roth's report is relevant to a determination of those claims. "In other words, Dr. Roth's report purports only to explain Plaintiff's theory of disparate impact." *See* Defendant's Motion, p. 4. Although plaintiff would assert that Dr. Roth's opinions concern both disparate treatment and disparate impact discrimination, Morgan Stanley's admission regarding the application of Dr. Roth's conclusions to disparate impact would require that the opinions be admitted, in any event.

RESPONSE TO MORGAN STANLEY'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY AND OPINION OF LOUISE ROTH - Page 6

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(360) 377-4614 fax

## Conclusion

Dr. Roth's expert conclusions have been shown to be both reliable and relevant. Morgan Stanley's challenges to Dr. Roth's testimony should come by way of "vigorous cross-examination," not exclusion under *Daubert*. Defendant's motion to exclude the testimony and opinion of Dr. Roth should be denied.

DATED this 30th day of November, 2007.

By: /s/ Terry A. Venneberg
Terry A. Venneberg
WSBA No. 31348
1126 Highland Avenue, Suite 101
Bremerton, Washington 98337
Telephone: (360) 377-3566
Fax: (360) 377-4614
E-mail: tavlaw@qwest.net

RESPONSE TO MORGAN STANLEY'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE TESTIMONY AND OPINION OF LOUISE ROTH - Page 7

**Terry A. Venneberg**
Attorney at Law
1126 Highland Avenue
Suite 101
Bremerton WA 98337
(360) 377-3566
(360) 377-4614 fax